**COMPUTERS UNLIMITED, INC.,**
**Appellant–Plaintiff,**

v.

**MIDWEST DATA SYSTEMS, INC., an Illinois Corporation; and GVS Enterprises Limited, an Illinois Corporation, Appellees–Defendants.**

No. 49A02–9501–CV–3.

Court of Appeals of Indiana.

Nov. 8, 1995.

Stephen M. Sherman, Sherman & Associates, Indianapolis, for appellant.

Donald G. Orzeske, Donald K. Broad, Osborn Hiner Lisher & Orzeske, Indianapolis, Michael C. Terrell, Mary T. Doherty, Sommer & Barnard, Indianapolis, for appellees.

## OPINION

ROBERTSON, Judge.

Computers Unlimited, Inc., appeals the grant of summary judgment in favor of Midwest Data Systems, Inc., and GVS Enterprises Limited. Computers Unlimited presents the following issues:

I. Whether the Court erred in granting the motions of Defendants Midwest Data Systems, Inc., and GVS Enterprises Limited Motions to Strike Plaintiff Computers Unlimited Inc.'s Response and supporting papers in opposition to Defendant's separate Summary Judgment Motions.

II. Whether the Court erred in granting Defendant GVS Enterprises Limited's Motion for Summary Judgment.

III. Whether the Court erred in granting Defendant Midwest Data Systems, Inc.'s Motion for Summary Judgment.

Inasmuch as a resolution of the first issue would not affect the results of this appeal, we consider only the arguments addressed to the propriety of summary judgment. We affirm in part and reverse in part.

Summary judgment is appropriate only if the pleadings and evidence sanctioned show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Winkler v.*

*V.G. Reed & Sons, Inc.* (1994), Ind., 638 N.E.2d 1228. The movant bears the burden to prove the non-existence of a genuine issue of material fact and may meet the burden with a demonstration that the undisputed material facts negate at least one element of the claim against it. *Id.* If the movant sustains the burden, then the opponent may not rest upon the pleadings but must set forth specific facts which show a genuine issue exists for trial. *Id.*

The evidentiary matter most favorable to Computers Unlimited reveals that Liebhardt Mills sought to consolidate its business operations and hired Computers Unlimited both to provide computer hardware and to integrate Liebhardt Mills' software into the new system. Computers Unlimited provided an Alpha Micro hardware system and provided programming services. Computers Unlimited also eventually provided software to Liebhardt Mills.

Liebhardt Mills experienced problems with the system from the outset and believed Computers Unlimited to be at fault. Liebhardt Mills contacted Alpha Micro for a list of other computer hardware dealers and subsequently contacted Midwest Data. In general, Midwest Data did not perform software programming services but recommended GVS Enterprises for the work. Liebhardt Mills met with Midwest Data and GVS Enterprises and related to them the problems it had experienced with Computers Unlimited. During the meeting, GVS Enterprises presented to Liebhardt Mills its standard terms and rates.

Liebhardt Mills subsequently decided to purchase a new computer hardware system from Midwest Data and to hire GVS Enterprises to provide the software consulting and programming services. On the weekend of March 6, 1992, Midwest Data installed the new computer hardware system and transferred software and data to the new system. Midwest Data also transferred to the new system a software security chip encoded with information which permitted the use of some of the software. On March 7, 1992, GVS Enterprises began to perform its services for Liebhardt Mills. On March 9, 1992, Liebhardt Mills notified Computers Unlimited that their relationship was terminated because Computers Unlimited had not maintained and supported the previous computer system sufficiently.

## II

Computers Unlimited alleged, in Count V of its complaint, that GVS Enterprises had tortiously interfered with its business relationship with Liebhardt Mills. Computers Unlimited alleged that GVS Enterprises had made an evaluation of the previous computer system which was critical of Computers Unlimited's services and that the evaluation had caused Liebhardt Mills to terminate its relationship with Computers Unlimited.

In support of its motion for summary judgment, GVS Enterprises designated certain evidentiary matter. GVS Enterprises identified a report it had submitted to Liebhardt Mills on March 19, 1992, and also identified answers which Computers Unlimited had given to interrogatories and other questions which related that its business relationship with Liebhardt Mills had terminated on March 9, 1992, that is, before the date of the report from GVS Enterprises.

■■■ One element of a cause of action for tortious interference with a contract is the existence of a valid and enforceable contract. *Winkler,* 638 N.E.2d at 1235. Similarly, one element of a cause of action for tortious interference with a business relationship is the existence of a valid business relationship. *Comfax v. North American Van Lines* (1992), Ind.App., 587 N.E.2d 118, 124. The undisputed material facts demonstrate that no valid and enforceable contract or valid business relationship existed between Computers Unlimited and Liebhardt Mills after March 9, 1992. Computers Unlimited has set forth no specific facts to show otherwise. GVS Enterprises issued the written report only after the termination. Also, Computers Unlimited and Liebhardt Mills had a disagreement about payments for services previously rendered; but one could not reasonably conclude that negotiations between the two on those matters constituted a continuance of the business relationship. Thus, GVS Enterprises bore its burden to prove

the non-existence of a genuine issue of material fact on claims of tortious interference with either a contract or a business relationship after March 9, 1992.

Computers Unlimited, however, indicated that the written report was only one of the reasons Liebhardt Mills had terminated their business relationship. The undisputed material facts demonstrate that Computers Unlimited had a valid and enforceable contract with Liebhardt Mills until March 9, 1992. Before that time, GVS Enterprises had met with Liebhardt Mills, had submitted standard terms and rates to Liebhardt Mills, and had begun to perform services for Liebhardt Mills.

■ Regardless, one element of a claim of tortious interference with a contract is the absence of justification. *Winkler*, 638 N.E.2d at 1235. GVS Enterprises claims the undisputed material facts show that it acted with justification, that is, in the spirit of competition. GVS Enterprises cites *Economation, Inc. v. Automated Conveyor Systems, Inc.* (1988 S.D.Ind.), 694 F.Supp. 553, which indicates that competition can constitute a justification in an action for tortious interference with a business relationship.

Our supreme court has referred to the Restatement (Second) of Torts § 767 (1977), for factors which may be considered on the issue of the existence of justification. *Winkler*, 638 N.E.2d at 1235. The present case, however, involves competitors. The section of the Restatement just mentioned, at comment a, refers to § 768 of the Restatement for situations which deal specifically with the question of whether competition is a proper or improper interference with contractual relations, either existing or prospective. The section reads:

§ 768 Competition as Proper or Improper Interference

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Restatement (Second) of Torts § 768 (1977). Further:

One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services. The only limitations upon this are those stated in Clauses (a) to (d).

*Id.* at comment b.

The rule stated in this Section rests on the belief that competition is a necessary or desirable incident of free enterprise. Superiority of power in the matters relating to competition is believed to flow from superiority in efficiency and service. If the actor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purposes for which competition is encouraged ...

*Id.* at comment e.

■ Even if, during the time before Liebhardt Mills terminated its business relationship with Computers Unlimited, GVS Enterprises had caused Liebhardt Mills not to continue with an existing contract with Com-

puters Unlimited, the evidence is undisputed that the contract was one terminable at will. The prospective contractual relation between Liebhardt Mills and GVS Enterprises undisputedly concerned a matter involved in the competition between GVS Enterprises and Computers Unlimited, that is, the provision of computer consulting and programming services. Also, Computers Unlimited has identified no evidence which supports the inference that GVS Enterprises created or continued an unlawful restraint of trade. Further, the evidence only supports the inference that GVS Enterprises' purpose was, at least in part, to advance its interest in competing with Computers Unlimited.

We therefore turn to whether the evidence supports the inference that GVS Enterprises employed wrongful means in the interference. As noted, GVS Enterprises has demonstrated that its purpose, at least in part, was to advance its interest in competition. Computers Unlimited has identified nothing in the record which shows that GVS Enterprises diverted its business from Liebhardt Mills by exerting a superior power in affairs unrelated to their competition. *See* Restatement (Second) of Torts § 768, comment e.

The undisputed evidence shows that Liebhardt Mills was unsatisfied with Computers Unlimited and began a search for different suppliers to replace it. GVS Enterprises learned about the search and, unbeknownst to Computers Unlimited, met with Liebhardt Mills. At that time, GVS Enterprises submitted its standard terms and rates. Liebhardt Mills eventually hired GVS Enterprises to replace Computers Unlimited in the area of computer consulting and programming services. None of this evidence supports the inference that GVS Enterprises employed wrongful means.

 Computers Unlimited further claims that GVS Enterprises aided in the conversion of one of its security chips when Midwest Data transferred it data to the new computer system. Any alleged illegal act of conversion, however, does not create a genuine issue of material fact under the circumstances. The plain language of the Restatement shows that the actor does not interfere improperly in the relation if, at the time he intentionally causes the third person not to continue an existing contract terminable at will, the actor does not employ wrongful means. The wrongful means must coincide with the causation. In the present case, the alleged conversion occurred on the weekend that Midwest Data constructed the new system. By that time, GVS Enterprises necessarily already would have caused Liebhardt Mills not to continue the existing contract, even though it had not yet notified Computers Unlimited of the termination. The alleged conversion of the security chip did not contribute to the cause of the termination and therefore did not constitute wrongful means.

No genuine issue of material fact exists on the issue of whether GVS Enterprises acted with justification. The undisputed facts show that GVS Enterprises merely acted within the proper scope of competition with Computers Unlimited over Liebhardt Mills' business. The trial court therefore properly granted summary judgment to GVS Enterprises on the claim of tortious interference.

III

Computers Unlimited alleged criminal conversion and tortious conversion against Midwest Data in Counts III and IV, respectively. Liebhardt Mills and Computers Unlimited each had claimed ownership of certain software and an encoded software security chip. Liebhardt Mills had allowed Midwest Data to install both the software and the chip on the new computer system. Computers Unlimited claimed Midwest Data knew or should have known that Liebhardt Mills' representation of ownership were false and therefore knowingly assisted Liebhardt Mills in the conversion of Computers Unlimited's property.

 A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion. Ind.Code 35–43–4–3. A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. 35–41–2–2(b).

In support of its motion for summary judgment, Midwest Data designated evidence which showed Liebhardt Mills had informed Midwest Data that it owned the software to be placed on the new system. Midwest Data also submitted that the chip in question, encoded to the software, belongs to whomever owns the software. In opposition to summary judgment, Computers Unlimited claims the evidence supports the conclusion that Midwest Data had reason to know that Computers Unlimited, not Liebhardt Mills, actually owned the chip. Computers Unlimited refers to information relayed to Midwest Data to the effect that the Liebhardt Mills leased its system from Computers Unlimited. Also, Computers Unlimited claims Midwest Data knew that the software was licensed to the computer it owned.

The record, however, shows that the software Computers Unlimited has identified was that of the operating system, which was licensed to the processor board and not to the chip in question. Further, even if Midwest Data knew that Liebhardt Mills leased the prior system from Computers Unlimited, such knowledge does not disturb the undisputed fact that Liebhardt Mills had asserted its ownership of the software and, according to industry custom, the chip went with the software, not with the hardware. Computers Unlimited has identified nothing which confirms that it specifically was asserting ownership of the software and chip and not the hardware leased to Liebhardt Mills.

■ Thus, even if Computers Unlimited is found to have actually owned the software security chip at the time, Computers Unlimited has not identified evidence which shows that, when Midwest Data exerted unauthorized control over the property, it acted with an awareness of a high probability it was doing so. In other words, no genuine issue of material fact exists on the issue of Midwest Data's knowing state of mind. The trial court therefore appropriately granted summary judgment to Midwest Data on the issue of criminal conversion.

■ Criminal conversion requires the unauthorized control to be either knowing or intentional. *Coffel v. Perry* (1983), Ind.App., 452 N.E.2d 1066. Mens rea, however, is not an element of tortious conversion. *Id.* Good faith is no defense. *See Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.* (1987), Ind.App., 507 N.E.2d 588, *trans. denied.* Conversion, as a tort, consists either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's. *Shank Fireproof Warehouse Co. v. Harlan* (1940), 108 Ind.App. 592, 29 N.E.2d 1003.

■ The evidence most favorable to Computers Unlimited supports the inference that Midwest Data helped Liebhardt Mills to appropriate Computers Unlimited's chip to their own use and benefit in the new computer system in defiance of the rights of, and under a claim of title inconsistent with that of, Computers Unlimited as the owner. Midwest Data's use of the chip, as it transferred operations from the old computer system to the new computer system, made its work easier and more profitable than it otherwise would have been. Midwest Data therefore individually benefitted from the appropriation.

Further, the evidence most favorable to Computers Unlimited supports the inference that Liebhardt Mills exceeded its authority in possession of the chip. If so, the evidence would support the conclusion that Midwest Data's possession, with Liebhardt Mills' permission, was consistent with tortious conversion.

■ Midwest Data also claims that no genuine issue of material fact exists on the issue of proximate cause. Midwest Data states that it only briefly had control of the chip and that it did not act to keep the chip from Computers Unlimited. These claims are arguments in mitigation of damages which Midwest Data should present to the trier of fact.

A genuine issue of material fact exists on the issue of whether Midwest Data committed tortious conversion. The trial court

therefore improperly granted the motion for summary judgment.

## CONCLUSION

The grant of summary judgment to GVS Enterprises is affirmed. The grant of summary judgment to Midwest Data is affirmed on the issue of criminal conversion and reversed on the issue of tortious conversion. The case is remanded to the trial court for further proceedings.

Judgment affirmed in part and reversed in part.

BAKER and DARDEN, JJ., concur.