BOEHM, Justice,
concurring in result.
I agree with the majority's analysis and conclusions on the record in this case. I write separately to explain why I agree that Piece of America (POA) is not entitled to relief for what amounts to a destruction of the website it had paid Gray Loon to construct.
POA's first counterclaim alleged that the "actions of plaintiff constitute conversion in violation of I.C. 35-48-4-3 as well as common law conversion." Criminal conversion that gives rise to a treble damages award is defined by statute, which requires that "property of another" be subject to unauthorized control. Ind.Code § 35-43-4-3 (2004). The Court of Appeals has described the civil tort of conversion as, among other things, either the "appropriation of the personal property of another to the party's own use and benefit" or its "destruction." Computers Unlimited, Inc. v. Midwest Data Sys., Inc., 657 N.E.2d 165, 171 (Ind.Ct.App.1995). An essential element of either conversion claim is an "immediate, unqualified right to possession resting on a superior claim of title." Shourek v. Stirling, 621 N.E.2d 1107, 1109 (Ind.1993).
Two issues present themselves: is a website "property" and if so what were POA's rights in the website? At least two other states now recognize claims for conversion of electronic data, internet domain names, and website content. See Deborah F. Buekman, Annotation, Conversion of Electronic Data, Including Domain Names, 40 A.L.R.6th 295, 306-12 (2008) (noting that New York and California have held such claims cognizable). Although Indiana cases have not addressed the issue specifically, several decisions from this state suggest that electronic data is "property" for the purposes of tortious or erimi-nal conversion. See, eg., State v. McGraw, 480 N.E.2d 552, 554 (Ind.1985) (opining that the information derived by use of a computer counts as property under the theft statute); Moser v. State, 433 N.E.2d 68, 70-71 (Ind.Ct.App.1982) (affirming conversion conviction where defendant ob *818 tained cable television signal without paying for it). But see Coleman v. Vukovich, 825 N.E.2d 397, 407-08 (Ind.Ct.App.2005) (holding that software-generated data would not be subject to conversion, trespass, or replevin claims, "which relate only to ... chattels themselves"). I agree with the implication of the majority that a website design is personal property and is subject to a conversion claim, whether or not it is "goods" subject to the Uniform Commercial Code.
I agree with the majority's conclusion that the first phase of the website was completed and paid for and the second phase constituted a separate transaction. The issue is whether Gray Loon had the right to dismantle the site when POA did not pay for the second phase. As the majority explains, when the first phase of the website was completed and paid for, POA did not acquire title to the site but did obtain a nonexclusive license to the eode defining the site. A nonexclusive license is a "personal contractual privilege that does not create a property interest." Uniform Computer Information Transactions Act § 508 erat. 3a (Supp.2008). "A nonexclusive license has been described as nothing more than a promise not to sue. It does not convey property rights in the information to the licensee." Id. § 102 emt. 41; see also 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 10.01[C]5] n. 78.1 (2008) (noting that a license is, "in legal contemplation, merely an agreement not to sue the licensee for infringement"). Without a property interest in the website, POA cannot sustain a common law conversion claim and is thus entitled to no relief on its action as pleaded.
A licensee is not without a remedy, however. A nonexclusive license is an implied-in-fact contract, I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (th Cir.1996); Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 559 n. 7 (9th Cir.1990), and it becomes "irrevocable if supported by consideration." 3 Nimmer, supra, § 10.02[BI[5]; see also Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 882 (5th Cir.1997) ("A nonexclusive license may be irrevocable if supported by consideration."). Moreover, "[cJourts regularly invoke the principle that a copyright licensor shall not 'do anything which would interfere with the licensee's right to enjoy the fruits of the license." 1 Paul Goldstein, Goldstein on Copyright, § 5.3.4.1b (3d ed.2005) (quoting Viacom Intl., Inc. v. Tandem Prods., Inc., 368 F.Supp. 1264, 1274 (S.D.N.Y.1974), aff'd, 526 F.2d 593 (2d Cir.1975)). "A grantor's breach of its obligations under a copyright contract will entitle the grantee to recover damages, to obtain injunctive relief and, if the breach is material, to rescind the contract." Id. § 5.8.5. There is no dispute in this case that the agreed price of the first version of the website was paid in full. POA therefore acquired an irrevocable license in the website which Gray Loon dishonored when it performed its destructive updates.
Gray Loon may have been justified in taking the site offline after POA failed to pay its hosting fees. But POA, by neglecting to pay the hosting fees, did not forfeit its license to the original website code and content. The majority observes that POA did not request a copy of the first phase website files. This does not relieve Gray Loon of its responsibility to preserve the initial version of the website that had been licensed to POA. After the companies fell out, POA retained its right to access those files under its nonexclusive license. Gray Loon was the sole custodian of the licensed code and elected to alter the site without preserving phase one before it reached a definitive agreement as to price or seope of work for phase two. As I see it, under these circumstances Gray Loon ereated *819 the problem that the licensed code no longer existed. It therefore had no right to seize both phases as collateral for its unpaid work on the second phase.
Whether POA had any damages from Gray Loon's breach is a matter of speculation on this record. POA elected to pursue only a conversion theory, presumably in hopes of treble damages and attorney fees in this dispute over an amount that surely is dwarfed by the cost of this litigation. Similarly, when Gray Loon sued for its fees, POA did not assert breach of its license as either an affirmative defense or set-off. I therefore concur in the result reached by the majority.