**Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.**



FILED

Apr 24 2013, 8:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**EDWARD J. CALDERARO**
**ANDREW J. MARTIN**
Sachs & Hess, P.C.
St. John, Indiana

ATTORNEY FOR APPELLEE:

**DONALD STEPANOVICH**
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

_____

| | | |
|---|---|---|
| ROBERT L. JOHNSON, BARBARA JOHNSON, PEACE BUILDING COMMUNITIES, THE PROFESSIONAL GROUPS OF THE MILLENNIUM, LTD., and GOD'S NEW COVENANT CHURCH, | ) ) ) ) ) ) | |
| Appellants-Defendants/Counter-Claimants, | ) ) | |
| vs. | ) ) | No. 45A03-1206-CT-285 |
| PEACE BAPTIST CHURCH, INC., | ) ) | |
| Appellee-Plaintiff/Counter-Defendant. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
Cause No. 45C01-0906-CT-116

**April 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Robert L. Johnson (Robert), Barbara Johnson (Barbara), People Building Communities (PBC), and Professional Groups of the Millennium, Etc., Ltd., (PGM) (collectively, Appellants) appeal the trial court's order in favor of Peace Baptist Church (Peace). Appellants present three issues for our review:

1.     Whether Peace filed its complaint outside of the statute of limitations;

2.     Whether the trial court erred when it found Robert and Barbara liable for conversion; and

3.     Whether the trial court erred when it did not address Robert's counterclaim for malicious prosecution.

Additionally, we raise the issue of jurisdiction *sua sponte*. We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

In 2006, Robert was the President of the Board of Directors of Peace and was "given a great deal of latitude by [the Pastor at the time] in dealing with financial affairs of [Peace][.]" (App. at 121.) At the same time, Robert and Barbara were President and Vice President, respectively, of PGM. PGM owned a Promissory Note and Mortgage on a property occupied by God's New Covenant Church (GNCC). GNCC made monthly payments of $2,435.23 to PGM.

In January 2006, Robert, acting as President of the Board of Directors of Peace, cashed in $250,000.00 in certificates of deposit owned by Peace, with the alleged intent to purchase the GNCC Promissory Note and Mortgage from PGM. On February 20, 2006, PGM sold GNCC's Promissory Note and Mortgage to "PBC, Inc.," (Plaintiff's Exhibit 10),

2

and GNCC was directed to send further payments to "PBC, Inc. c/o Professional Group Mortgage[.]" (*Id.*) From February 2006 until April 2007, GNCC's payments were deposited into Peace's bank account.

In April 2007, Robert and Barbara incorporated PBC, and served on the Board of Directors of PBC with Amelia Carillo. From April 2007 to May 2010, GNCC's payments were deposited into PBC's account. Despite allegedly transferring interest twice, GNCC's Promissory Note and Mortgage remained in PGM's name, and the mortgage was never recorded in any name other than PGM.

In May 2008, Verdell Hildreth, the Secretary of the Board of Directors of Peace, first learned of the $250,000.00 withdrawal of Peace funds Robert completed in January 2006. On June 11, 2009, Peace filed a complaint against Appellants and GNCC[1] alleging conversion, breach of fiduciary duty, misrepresentation, fraud, and gross negligence, stemming from an alleged misuse of church funds. On August 5, Appellants filed their respective answers to the complaint. In addition to his answer, Robert filed counterclaims for defamation and malicious prosecution.

On May 24, 2010, shortly after the trial court ordered GNCC's payments be deposited with the Clerk of Courts pending the determination on Peace's action, Robert and Barbara dissolved PBC into Christian Faith Ministry, Inc. On March 19, 2012, the trial court held a three day bench trial on the matter, and on May 23 entered its order. The order granted "equitable relief in the form of transferring ownership of a secured promissory note and

---

[1] By stipulation of the parties, GNCC was dismissed from the case on September 20, 2010.

mortgage" from PGM to Peace, awarded Peace $90,103.51 in damages, and denied Robert's defamation counterclaim. (Br. of Appellee at 2.) The order did not mention or decide Robert's remaining counterclaim for malicious prosecution.

## DISCUSSION AND DECISION

1.    <u>Jurisdiction</u>

Subject matter jurisdiction concerns a court's ability to hear and decide a particular matter based on the class of cases to which it belongs. *Young v. Estate of Sweeney*, 808 N.E.2d 1217, 1219 (Ind. Ct. App. 2004). The issue of subject matter jurisdiction is an issue we should raise *sua sponte* if the parties do not. *Id*. Pursuant to Ind. Appellate Rule 5(A), we have jurisdiction to review appeals from final judgments. Under the appellate rules, a judgment is final if:

> (1) it disposes of all claims as to all parties;
> (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;
> (3) it is deemed final under Trial Rule 60(C);
> (4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or
> (5) it is otherwise deemed final by law.

App. R. 2(H). As stated in the facts, the trial court's order addressed all claims brought by Peace, but only one of Robert's two counterclaims. In addition, the order did not include the language required under App. R. 2(H)(2). Despite the incompleteness of the trial court's order and argument asserting the trial court did not decide one of the issues, Appellants

4

contend their appeal is "an Appeal of Final Judgment pursuant to Ind. Appellate Rule 5(A)." (Br. of Appellant at 1.) The trial court's order was not final because it did not dispose of all claims of all parties.

Because the order was not final, the Appellants cannot appeal unless the order is an appealable interlocutory order. *Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), *reh'g denied*. "An interlocutory order is one made before a final hearing on the merits and requires something to be done or observed but does not determine the entire controversy." Id. We have jurisdiction to consider interlocutory appeals pursuant to App. R. 14. App. R. 5(B).

Pursuant to App. R. 14(A), certain interlocutory orders may be appealed as a matter of right. Those matters which are interlocutory appeals of right are:

(1) For the payment of money;
(2) To compel the execution of any document;
(3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;
(4) For the sale or delivery of the possession of real property;
(5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
(6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;
(7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;
(8) Transferring or refusing to transfer a case under Trial Rule 75; and
(9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

App. R. 14(A). The trial court ordered Johnson to pay Peace $90,103.51, and surrender the title to the promissory note and real estate mortgage for GNCC's building. Therefore, we

have jurisdiction over the appeal by virtue of App. R. 14(A)(1) – (2).

2.      Trial Court's Findings

The trial court *sua sponte* entered findings of fact and conclusions of law regarding

Peace's claims and one of Johnson's counterclaims. Our standard of review in such

circumstances is well-settled:

> Where the trial court enters specific findings *sua sponte*, [ ] the specific
> findings control our review and the judgment only as to the issues those
> specific findings cover. Where there are no specific findings, a general
> judgment standard applies and we may affirm on any legal theory supported by
> the evidence adduced at trial.
> We apply the following two-tier standard of review to *sua sponte*
> findings and conclusions: whether the evidence supports the findings, and
> whether the findings support the judgment. Findings and conclusions will be
> set aside only if they are clearly erroneous, that is, when the record contains no
> facts or inferences supporting them. A judgment is clearly erroneous when a
> review of the record leaves us with a firm conviction that a mistake has been
> made. We consider only the evidence favorable to the judgment and all
> reasonable inferences flowing therefrom, and we will neither reweigh the
> evidence nor assess witness credibility.

*Trust No. 6011, Lake County Trust Co. v. Heil's Haven Condominiums Homeowners Ass'n*,

967 N.E.2d 6, 14 (Ind. Ct. App. 2012).

a.      Statute of Limitations

 "In Indiana, statutes of limitations are favored because they afford security against

stale claims and promote the peace and welfare of society." *Morgan v. Benner*, 712 N.E.2d

500, 502 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. "They are enacted upon the

presumption that one having a well-founded claim will not delay in enforcing it." *Id.*

Appellants argue Peace was not permitted to bring its claim for conversion against

6

Appellants, as it was barred by the statute of limitations because the conversion allegedly occurred on April 22, 2007, and Peace did not commence its action against the Appellants until June 11, 2009.

Pursuant to Ind. Code § 34-11-2-4, an action for "injury to personal property" must be "commenced within two (2) years after the cause of action accrues." However, there are two situations under which the tolling of the statute of limitations for an action does not occur at the time of the alleged injury. First, pursuant to Ind. Code § 34-11-5-1, "[i]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." Second, under the common law discovery rule, "a cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Konkle v. Henson*, 672 N.E.2d 450, 459 (Ind. Ct. App. 1996) (quoting *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 842 (Ind. 1992)).

Here, the trial court found:

### F. Knowledge and Approval of Transactions by Peace Baptist's Board of Directors

32. In 2006, there were eight (8) members of Peace Baptist's Board of Directors. Peace Baptist presented testimony, either in-person or by deposition, of the following six (6) Directors:

Verdell W. Hildreth
Joe H. James
Isaac Washington, Jr.
Willie C. Jackson
William H. Harris; and
Stevie B. Anderson

Another Director, Larry Barber, died before the trial of this cause and his

7

deposition was not taken. Mr. Johnson was the President of the Board of Directors and the eighth member. **{Articles of Amendment to the Articles of Incorporation, admitted into evidence at the trial as Plaintiff's Exhibit 1, p.4, Section 6 and p.3, Section 4}.**

33. The testimony of Peace Baptist's Directors was inconsistent and inconclusive: as to the purchase of Peace Baptist of the GNCC Promissory Note and Mortgage being discussed in a meeting of Peace Baptist's Board of Directors, and whether or not it was [sic] was it ever approved by a vote of the Peace Baptist Board of Directors. However, the evidence did establish [Mr. Johnson] was given a great deal of latitude by the prior Pastor in dealing with the financial affairs of the church, and the evidence demonstrated that [Mr. Johnson] did not breach the trust placed in him because the church was fiscally sound with substantial liquid assets.

34. Verdell Hildreth, the Secretary of the Peace Baptist Board of Directors, testified that he first learned of Peace Baptist's payment of $250,000 to PGM in May, 2008 when the church's Finance Committee, of which Mr. Johnson was Executive Director, posted a document entitled "Peace Baptist Church Financial Statement" for the years 2005, 2006, and 2007.

35. The evidence in this case was insufficient to establishes [sic] that a "donation" to PBC of the GNCC Promissory Note and Mortgage was never discussed or approved by Peace Baptist's Board of Directors.

(App. at 120-21) (emphasis in original). The trial court's findings indicate an agent of Peace did not discover Peace's payment to PGM until May 2008. As Robert was given a "great deal of latitude" in making financial decisions for the church, and the evidence was inconclusive whether the Board met regarding the issue, and as the financial statements for 2005, 2006, and 2007 were not prepared until May 2008, it is reasonable to conclude Peace had no knowledge of Robert's conversion until May 2008. Therefore, Peace filed its action within the required two-year statute of limitations by filing on June 11, 2009. Robert's arguments to the contrary are invitations for us to reweigh the evidence, which we cannot do.

8

*See Trust No. 6011*, 967 N.E.2d at 14 ("We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.").

        b.     *Mens Rea*

A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss, and in such a civil action must prove by a preponderance of the evidence that the defendant committed the criminal act. *Jet Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008), *trans. denied*. A person commits criminal conversion when he or she: "knowingly or intentionally exerts unauthorized control over property of another person." Ind. Code § 35-43-4-3. In a criminal conversion action, criminal intent is an essential element that must be proven. *Id*. To establish that intent, a plaintiff must show the defendant was aware of a high probability his control over the plaintiff's property was unauthorized. *Id*. Robert argues Peace did not present sufficient evidence he possessed the *mens rea* to commit conversion.

While criminal conversion requires the unauthorized control to be either knowing or intentional, *mens rea* is not an element of tortious conversion. *Computers Unlimited, Inc. v. Midwest Data Systems, Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995). Nor is good faith a defense. *Id*. Conversion, as a tort, "is the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's." *Id*.

9

In the instant case, the trial court found PGM never "negotiated, transferred or endorsed the GNCC Promissory Note to Peace Baptist as required by I.C. 26-1-3.1-2.1; I.C. 26-1-3.1-203; I.C. 26-1-3.1-204; and I.C. 26-2-3-1," (App. at 122), and never recorded an Assignment of Mortgage from PGM to Peace. Additionally, the trial court found any donation from Peace Baptist to PBC was never consummated for the same reasons. Finally, the trial court found all of the Appellants exerted unauthorized control over thirty-seven mortgage payments made by GNCC; the mortgage payments were deposited in PBC's account instead of being rightfully deposited into Peace's account.

The evidence supports the trial court's findings. At the time of trial, the Promissory Note in question was titled under PGM's name, and the Mortgage for the GNCC building was titled to PGM. Peace presented evidence it received thirteen months of monthly mortgage payments from GNCC, until May 2007, when the payments were deposited into PBC's account until the trial court ordered them paid to the Clerk of Courts pending the outcome of the litigation. Therefore, as there was seemingly an agreement to transfer GNCC's Promissory Note to Peace, the note was never actually transferred, and PGM, Robert, and Barbara exercised unauthorized control over the Promissory Note.

### c.  Possession by Robert, Barbara, and PGM

Robert, Barbara, and PGM argue the trial court erred when it found them personally liable for conversion because "none of these parties received or otherwise possessed or controlled the funds in question." (Br. of Appellant at 22.) Fatal to this claim is the Appellants' failure to adhere to the Rules of Appellate Procedure. Indiana Appellate Rule

10

46(A)(8)(a) requires an appellant's argument "contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix relied on[.]" Appellants do not cite case law or statutes to support this argument. Therefore, the issue is waived. *See New v. Personal Representative of Estate of New*, 938 N.E.2d 758, 763 (Ind. Ct. App. 2010) (failure to cite to the record or cases and statutes germane to the issue results in waiver of the issue), *reh'g denied*, *trans. denied*.

### 3.    Robert's Remaining Counterclaim

In his counterclaim, Robert alleged Peace committed defamation and malicious prosecution. In its order, the trial court addressed only the defamation claim. Thus, the trial court still must decide Robert's counterclaim for malicious prosecution. Therefore, we remand to the trial court for determination of that issue.

## CONCLUSION

We hold Peace presented evidence to support the trial court's findings, and the findings support the trial court's conclusions. However, we remand for determination of Robert's counterclaim for malicious prosecution.

Affirmed and remanded.

ROBB, C.J., and PYLE, J., concur.

11