Predrag **VUKOVICH, individually and as agent, member and/or representative of Alliance, L.L.C., Appellant–Defendant,**

v.

**Donald R. COLEMAN and International Magnaproducts, Inc., Appellees–Plaintiffs.**

No. 64A05–0209–CV–439.

Court of Appeals of Indiana.

June 5, 2003.

George W. Terrell, Jr., Michael A. Fish, Terrell & Thrall, LLP, Valparaiso, IN, Attorneys for Appellant.

Steven M. Bush, Millbranth and Bush, Valparaiso, IN, Attorney for Appellees.

## OPINION

MATTINGLY–MAY, Judge.

Predrag Vukovich appeals the grant of a preliminary injunction prohibiting him from competing against International Magnaproducts, Inc. ("IMI") and its owner Donald Coleman pursuant to a covenant not to compete Vukovich and IMI had executed some two years previously. Vukovich asserts the injunction was improperly granted for a number of reasons, of which we find one dispositive: the covenant enforced by the injunction is unreasonable in the absence of a geographic limitation. We reverse and remand.

## FACTS

Vukovich was employed by IMI from 1996 until the end of 2001. IMI obtains magnets from manufacturers or distributors and sells them to customers. On September 8, 1999, IMI and Vukovich entered into the following agreement:

### Employee Non–Compete Agreement

For good consideration and as an inducement for **International Magnaproducts, Inc.** (Company) to employ **Dan P. Vukovich** (Employee), the undersigned Employee hereby agrees not to directly or indirectly compete with the business of the Company and its successors and assigns during the period of Employment and for a period of 5 (Five) years following termination of employment and notwithstanding the cause or reason for termination.

The term "not compete" as used herein shall mean that the Employee shall not own, manage, operate, consult to or be employed in a business substantially similar to or competitive with the present business of the Company or such other business activity in which the Company may substantially engage during the term of employment.

The Employee acknowledges that the Company shall or may in reliance of this agreement provide Employee access to trade secrets, customers and other confidential data and that the provisions of this agreement are reasonably necessary to protect the Company and its good will. Employee agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party. This agreement shall be binding upon and inure to the benefit of the

parties, their successors, assigns and personal representatives.

(Exhibit Vol. at 2.)

In early 2001, IMI discussed with Vukovich the formation of a company that would sell motors. The company, Alliance Motors LLC, was formed in August 2001. Vukovich was to operate the company. Vukovich left IMI's employ effective January 1, 2002, apparently because of a conflict with some members of Coleman's family. Coleman and Vukovich agreed that Vukovich would move to a space across the street from IMI and operate Alliance Motors. Vukovich would also establish a company called Alliance, LLC, which would take certain existing IMI clients and service them as sales representative. The commissions Vukovich earned for servicing those clients would be used to pay the expenses for Alliance Motors until it could support itself. Coleman asserts Vukovich began competing with IMI by selling magnets to customers other than the clients Alliance LLC was to service.

On July 9, 2002, IMI brought a complaint against Vukovich alleging breach of the covenant, violation of the Indiana Uniform Trade Secrets Act,[1] and tortious interference with contractual relations. IMI sought a temporary injunction to enforce the provisions of the covenant not to compete. The trial court determined "there exists a valid and enforceable Covenant to not Compete between [IMI] and Vukovich"

(Appellee's App. at 53) and that Vukovich had failed to show the parties had rescinded it by their conduct. It accordingly granted the temporary injunction.

## DISCUSSION AND DECISION

 The grant or denial of a preliminary injunction rests within the equitable discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *Unger v. FFW Corp.,* 771 N.E.2d 1240, 1243 (Ind.Ct.App.2002). The power to issue an injunction should be used sparingly, and such relief should not be granted unless the law and facts are clearly in the moving party's favor. *Id.* The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: 1) whether the movant has an adequate remedy at law; 2) whether granting the injunction will disserve the public interest; 3) whether the movant has established a reasonable likelihood of success at trial; and 4) whether the injury to the movant outweighs the harm to the party to be enjoined. *Id.*

 In determining whether the trial court abused its discretion, we look to the trial court's findings of fact[2] and determine whether the findings support the judgment. *Id.* We will not set aside the trial court's findings unless they are clearly erroneous. Findings are clearly erroneous when the record lacks any facts or

---

1. Ind.Code § 24–2–3–1 to –8.

2. The trial court did not enter specific findings of fact as required by Ind. Trial Rules 52(A) and 65(D). IMI argues this is not a basis for reversal because findings of fact are adequate if they are sufficient to disclose a basis for the legal result, and the order stated the parties had not rescinded the covenant by their conduct. No other findings were necessary, IMI asserts, because the parties "stipulated the validity of the covenant not to compete[.]" (Br. of Appellee at 10.)

Nor did the trial court require IMI to provide security pursuant to T.R. 65. IMI so acknowledges, but suggests the cause could be remanded for that purpose.

Because we find parties did not stipulate to the validity of the covenant and because the injunction was improperly granted due to the invalidity of the covenant, we need not address the effect of the trial court's failure to enter findings or set a bond.

reasonable inferences to support them. *Id.* We consider the evidence in the light most favorable to the judgment and construe findings liberally in favor of the judgment. *Id.*

### Waiver

■ IMI asserts Vukovich's challenge to the validity of the non-compete covenant is waived on appeal because the parties stipulated "as to the existence of a valid non-compete agreement, signed by the parties, subject only to the defense of recission based on the actions of the parties." (Br. of Appellee at 12.) IMI finds such a "stipulation" at two places in the record. First, IMI notes a statement by the court, addressing Vukovich's counsel, that "we're saying that there is an agreement and parties all signed it, I guess that's stipulated, so then we have a contract, so, I guess it now shifts to you to establish a reason it's not an agreement by rescission." (Tr. I at 7.)[3] Counsel responded "Okay." (*Id.*) Next, IMI directs us to its introduction of the covenant into evidence after Vukovich testified the exhibit was a true and exact copy that included his signature and Coleman's. Vukovich's response when the exhibit was offered was "Stipulated, Your Honor." (*Id.* at 60.)

We decline IMI's apparent invitation to hold that the response "Okay" to the court's statement that a contract exists, or the response "Stipulated" to the offering of a contract into evidence, amounts to a stipulation that the contract in question is valid and that a preliminary injunction was properly granted to enforce it. Vukovich therefore did not, by merely agreeing that a contract existed, waive for purposes of appeal his arguments that the contract was invalid or the injunction improper.

We further note that the issues Vukovich raises on appeal were before the trial court. Vukovich submitted to the trial court a memorandum of law that noted "The initial inquiry in this matter is to determine if the covenant not to compete has been rescinded or waived by the parties," (Appellants' Supp. App. at 2) but that went on to address the additional issues Vukovich raised on appeal. At the hearing, Vukovich attempted to elicit testimony regarding the absence of any geographical limitation in the covenant. IMI objected, not on grounds of relevance but rather because "the document speaks for itself, and any parole evidence at this point we believe would be improper." (Tr. I at 22.)

We therefore decline to hold that Vukovich has waived his arguments as to the validity of the covenant by virtue of an "attempt to assert arguments contrary to the stipulation" (Br. of Appellee at 1) or an attempt to "raise for the first time on appeal arguments not raised during the course of the hearing" (*Id.*)[4]

---

3. The trial court conducted hearings on this matter on July 30, 2002, and on August 2, 2002. Vukovich provided separately-bound transcripts of each but the pages of the two volumes are not numbered consecutively as required by Ind. Appellate Rule 28(A). We will therefore refer to the July 30 transcript as "Tr. I" and the August 2 transcript as "Tr. II."

4. IMI offers no argument concerning the issues Vukovich raises as to the validity of the agreement. An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief. *Newman v. State,* 719 N.E.2d 832, 838 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 220 (Ind.2000). This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Id.* Controverting arguments advanced for reversal is an obligation that properly remains with counsel for the appellee. *Id.* Therefore, Vukovich need establish only that the lower court committed *prima facie* error to win reversal on this issue. *Prima facie* means at first sight, on

### The Covenant

 The covenant at issue here is invalid because it provides no geographic limitation. Covenants not to compete are in restraint of trade and are not favored by the law. *Burk v. Heritage Food Serv. Equip. Inc.*, 737 N.E.2d 803, 811 (Ind.Ct. App.2000). Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest. *Id.*

 To determine the reasonableness of a covenant, we examine at the outset whether the employer has asserted a legitimate interest that may be protected by a covenant. *Id.* If the employer has asserted a legitimate, protectible interest, then we determine whether the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited. *Id.* The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances. *Id.* The employer must demonstrate that the former employee has gained a unique competitive advantage or ability to harm the employer before the employer is entitled to the protection of a noncompetition covenant. *Id.*

 A covenant not to compete that contains no geographic limitation is presumptively void. *See, e.g., Struever v. Monitor Coach Co.*, 156 Ind.App. 6, 8, 294 N.E.2d 654, 655 (1973) ("It has long been the law in Indiana that a covenant not to compete containing no spatial limitations is void and unenforceable."). There, Monitor contended that confining the operation of the covenant to its 129 dealers in 29 states

was reasonable. However, there was no evidence defining the specific territories of the dealers. Thus, we found the covenant unenforceable because it did not specifically limit its operation geographically. "As written it could apply to the entire world." *Id.* at 10, 294 N.E.2d at 656.

In *Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 411, 127 N.E.2d 235, 240–41, (1955), our supreme court held that a covenant that would limit one's employment with a competitor "beyond the scope of his present employment" is void. Donahue's employment with Permacel was limited to northern Indiana. There was no evidence he acquired trade secrets or other confidential information from his employer, the competitive use of which was related to or could result in irreparable injury to Permacel's business throughout the United States and Canada where the covenant purported to restrict Donahue's employment. Therefore, the covenant was unreasonable to the extent it purported to restrict Donahue's gainful employment beyond the area of his former employment.

The covenant before us states that Vukovich

> acknowledges that the Company shall or may in reliance of this agreement provide Employee access to trade secrets, customers and other confidential data and that the provisions of this agreement are reasonably necessary to protect the Company and its good will. Employee agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.

first appearance, or on the face of it. *Id.* This standard prevents two evils that would otherwise undermine the judicial process. By requiring the appellant to show some error, we ensure that the court, not the parties, decides

the law. By allowing the appellant to prevail upon a showing simply of *prima facie* error, we avoid the improper burden of having to act as advocate for the absent appellee.

(Exhibit Vol. at 2.) IMI does not argue on appeal that Vukovich had actually acquired trade secrets or other confidential information from IMI.

 A covenant without a geographic limitation may be reasonable if its reach is adequately limited by other means. In *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind.Ct.App. 1982), we noted that as the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases. There, the covenant prohibited Seach from contacting past, present, or prospective clients of the firm. We rejected as unenforceable the portions of the covenant concerning past and prospective clients, but determined the non-competition agreement was valid as to present customers of the firm. We noted we need not reject the entire contract because when objectionable and non-objectionable terms appear in a contract, the contract may be held divisible and the restriction as to the reasonable limits expressed could be enforced. *Id.* at 215.

The covenant IMI and Vukovich entered into contains no such additional limitation that might reduce or eliminate the need for a territorial limitation. It purports to prohibit direct or indirect competition with IMI and to prohibit Vukovich from owning, managing, operating, or consulting with "a business substantially similar to or competitive with" IMI's business.

Because the covenant before us as written "could apply to the entire world," *Struever*, 156 Ind.App. at 10, 294 N.E.2d at 656, and includes no provision otherwise limiting its scope, the covenant is invalid and the injunction enforcing it was improperly granted.

## CONCLUSION

The trial court abused its discretion when it enjoined Vukovich from competing with IMI pursuant to the covenant not to compete. We must therefore reverse and remand for further proceedings consistent with this opinion.

FRIEDLANDER, J., and BROOK, C.J., concur.