IN THE MATTER OF THE ADOPTION OF: A.L.M., a minor,
RYAN L. SHIMKUS, Appellant-Petitioner.
No. 28A05-0804-CV-199
Court of Appeals of Indiana.
October 31, 2008.
PAUL J. WATTS, Watts Law Office, P.C. Spencer, Indiana, ATTORNEY FOR APPELLANT.

MEMORANDUM DECISION
MAY, Judge
Ryan L. Shimkus appeals the denial of his petition to adopt his step-daughter, A.L.M. The evidence, viewed in the light most favorable to the judgment, supports the court's findings and judgment. Accordingly, we affirm.

FACTS AND PROCEDURAL HISTORY 
A.L.M. was born June 12, 1999, to Brandon L. Mays and LaTonya Lynn Shimkus ("Mother"). Mays and Mother never married. Paternity was established, Mother received custody of A.L.M., and Mays was to exercise visitation and pay child support. Mother later married Shimkus.
On July 27, 2007, Shimkus filed a petition to adopt A.L.M. Attached to the petition was an affidavit from Mother in which she consented to the adoption. The petition alleged Mays' consent was not required because he had failed to communicate with A.L.M. significantly for a year. Mays contested the adoption.
The court held a hearing to determine whether Mays' consent was required. After the hearing the court denied Shimkus' petition in an order that provided, in pertinent part:

FINDINGS OF FACT
1. [A.L.M.] is a female child, born June 12, 1999. Brandon L. Mays and LaTonya Lynn Shimkus are the child's natural parents and they were never married. Paternity was established in the Greene Circuit Court and the Mother was awarded custody with the Father entitled to parenting time and ordered to pay weekly child support. The Father does not consent to the adoption of the child.
2. Between July 17, 2006 and July 27, 2007, the date the Petition for Adoption was filed in this case, the Father did not see or visit with the child. During the same time period the Father paid a total of $210.00 in child support, which consisted of four separate payments: 10/4/06 ($60), 1/31/07 ($50.00), 2/23/07 ($50.00), and 2/26/07 ($50). During the relevant time period the Father was self-employed with a struggling construction/landscaping business. During the same time period the Father made periodic telephone calls to the [M]other in a[n] attempt to communicate with and about the child, and the Father had telephone conversations with the child 4 or 5 times, which conversations were very short in duration. The Father has not sent gifts, cards, letters, or otherwise communicated with the child.
3. A body attachment was issued from the Greene Circuit Court for the Father and the Father remained in northern Indiana, at least in part, to avoid service of the body attachment. Further, the Father testified that he was avoiding the process in order to attempt to save his struggling business, which is also indicative of his diminished ability to pay child support during the relevant time period. The Mother advised the Father during their conversations that she would have the body attachment served upon him if he were to be in her presence. Although it is reasonable for the Mother to have the body attachment served upon the Father, this act did to some degree hamper the Father's ability to visit with the child. The Court is persuaded that during at least some of the telephone conversations between the parents that the Father discussed visitation with the child. Further, the Court finds that the Mother did not attempt to facilitate communication or visitation between the Father and the child, and likely could have made child available for more substantial telephone contact. It is clear that the Father's telephone calls were for the sole purpose of discussing the child as the Mother and Father did not have communication other than about the child.
4. Any finding of fact found to be a conclusion of law shall be deemed as such.

CONCLUSIONS OF LAW
[Court set out the controlling law, without applying it to the facts of this case.]
ORDER
Although the Father has clearly not met his parental obligations as normal societal standards would require, the Court cannot find that the Petitioner has met his high burden required to dispense with the natural parent's consent pursuant to any section of I.C. XX-XX-X-X.
IT IS THEREFORE ORDERED that the Father's consent is required and since the Father does not consent, the Petition for Adoption is hereby denied.
(App. at 7-9.)

DISCUSSION AND DECISION
When we review a trial court's decision in an adoption case, we may not reverse "unless the evidence at trial leads to but one conclusion, and the trial court reached an opposite conclusion."[1]In re Adoption of C.E.N., 847 N.E.2d 267, 271 (Ind. Ct. App. 2006). We may not reweigh the evidence. Id. Rather, we examine the evidence most favorable to the judgment, along with the reasonable inferences therefrom, to determine whether sufficient evidence exists to support the decision. Id. We presume the trial court made the correct decision, and the Appellant must overcome that presumption. Id.
Shimkus asserts the court should have granted his petition to adopt without Mays' consent because Mays had forfeited his right to consent:
Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
(A) fails without justifiable cause to communicate significantly with the child when able to do so; or
(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
Ind. Code § 31-19-9-8(a). "[T]he court may declare the child abandoned" if the "parent has made only token efforts to support or to communicate with the child." Ind. Code § 31-19-9-8(b). A petitioner for adoption who wishes the court to waive a biological parent's right to consent has the burden of proving the statutory criteria "by clear, cogent and indubitable evidence." Adoption of C.E.N., 847 N.E.2d at 271.
Shimkus first challenges the finding "Mother did not attempt to facilitate communication or visitation between the Father and the child, and likely could have made child available for more substantial telephone contact." (App. at 8.) Shimkus alleges "the trial court's implication is unfounded." (Appellant's Br. at 7.) There is evidence to support this finding.
Mother testified their home telephone is not attached to an answering machine, (Tr. at 58); therefore Mays could not leave messages for A.L.M. Mays has asked Mother to have A.L.M. call him on his cell phone, but Mother has never had A.L.M. call him. (Id. at 96-97.) When asked about whether A.L.M. calls Mays, Mother testified "that's his job to call her," (id. at 118), which suggests Mother did not encourage A.L.M. to contact Mays. Furthermore, Mother's testimony regarding A.L.M.'s involvement in dance suggests A.L.M. is frequently out of the house after school until 9 p.m., such that Mays' opportunities to contact her at home would be limited. (See id. at 55 ("My daughter is actively involved in dance. Maybe she was at dance."); id. at 57 ("My daughter is in dance at night."); id. at 116-117 (A.L.M. would be gone two nights in a row and would not have time to talk after school; Mays needed to call at 9 p.m.)). Mays testified it is "pretty difficult to get a hold of" A.L.M. on the telephone, (id. at 94), and that "several times" he has been told he could not speak to A.L.M. (Id. at 96.) All these facts support the court's finding.
Shimkus also challenges the finding "Mother advised the Father during their conversations that she would have the body attachment served upon him if he were to be in her presence." (App. at 7.) He asserts "[n]othing in the record supports" that finding. (Appellant's Br. at 7.) On direct examination, Mother testified:
Q You offered to meet him some place. When was that?
A That would have been probably October oh, I don't know it was in 2006, I don't remember which phone conversation it was, but it was one of them where he knew he had a warrant and I said sure I you know I would meet him. Of course, he didn't take me up on that.
Q And the way you said it, would he have been unreasonable in thinking that you would have had the police there?
A No, he probably knew that.
(Tr. at 21-22.) Mother's response suggests she gave Mays the impression she would bring the police to an arranged meeting. Accordingly, the court's finding is supported.
Mays testified he called his daughter between one and three times per week. When challenged regarding the discrepancy between his estimate of the number of times he called and the number of calls recorded on his phone bill, Mays asserted his phone bill might not register his calls to the house unless someone answered the telephone; as Mother had no answering machine, the trial court may have found his argument credible. Mays also testified he had been denied the opportunity to talk to A.L.M. on some occasions when he reached Shimkus or Mother.
We therefore cannot find all the evidence at trial led to the conclusion Mays had failed to significantly communicate with A.L.M. when able to do so. Rather, one could reasonably infer, as it appears the trial court did, that Mays tried to maintain more significant communication with A.L.M. than the four or five conversations they had. Therefore, we affirm the court's determinations that Mays' consent was required for A.L.M.'s adoption and the petition therefore had to be denied.[2]
Affirmed.
ROBB, J., and NAJAM, J., concur.
NOTES
[1] We note Mays did not file an appellee's brief. When an appellee fails to file a brief, "an appellant may prevail by establishing a prima facie case of error." In re Paternity of J.C., 819 N.E.2d 525, 527 (Ind. Ct. App. 2004). Prima facie errors are those that appear "at first sight, on first appearance, or on the face of it." Id. Application of this standard relieves us of the burden of developing arguments for the appellee. Id. "This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." Vukovich v. Coleman, 789 N.E.2d 520, 524 n.4 (Ind. Ct. App. 2003).
[2] While Shimkus set out the statutory provisions regarding abandonment and failure to provide support, his argument section discussed only Mays' alleged lack of communication with A.L.M. Accordingly, that is the only section of the statute we address.