**Alexander R. PALA, Appellant,**

v.

**Annaré L. Pala LOUBSER, Appellee.**

**No. 91A05–1004–DR–271.**

Court of Appeals of Indiana.

Feb. 11, 2011.

Jason W. Bennett, Bennett Boehning & Clary LLP, Cynthia Phillips Smith, Law Office of Cynthia P. Smith, Lafayette, IN, Attorneys for Appellant.

Brian G. Dekker, O'Brien & Dekker, Lafayette, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Alexander R. Pala appeals the trial court's grant of Annaré L. Pala Loubser's motion to terminate maintenance award. Pala raises one issue, which we revise and restate as whether the court erred in granting Loubser's motion. We affirm.

The relevant facts follow. Pala, who is an achondroplastic dwarf,[1] and Loubser

---

1. We noted in a previous opinion on appeal between the parties that Achondroplasia is a rare genetic disorder characterized by an un- usually large head with a prominent forehead and flat nasal bridge; short upper arms and legs; unusually prominent abdomen and but-

were married in August 1994. Loubser is a physical therapist and operates a business. *See Loubser v. Pala,* No. 91A04–0305–CV–239, slip op. at 2–3, 798 N.E.2d 567 (Ind.Ct.App. Nov. 06, 2003), *trans. denied.* Pala was employed at a plumbing hardware supply store for approximately twenty years as a laborer. *Id.* His physical condition deteriorated, and he had back surgery in April 1994. *Id.* at 3. Pala began receiving social security disability benefits in June 1996. *Id.* Pala and Loubser separated and Pala filed for divorce in August 2001. *Id.*

On January 23, 2003, the trial court issued a decree of dissolution and property settlement order. *Id.* The decree included findings of fact and conclusions of law and awarded Pala approximately seventy-three percent of the marital property. *Id.* The court found that the marital property and debt included the parties' residence, which had a fair market value of $241,000 and mortgage of $160,589, and a "[r]ental property real estate adjacent to residence," which had a fair market value of $78,000 and mortgage of $49,416.[2] Appellant's Appendix at 30.

The court found that Pala is fourteen years older than Loubser, that Pala received "$770.00 per month social security disability benefits, from which is deducted $54.00 per month for Medicare health insurance" and that Pala was "otherwise unemployed and has no other source of income." *Id.* at 26, 34. The court further found that Pala had "significant leg and back problems which cause severe pain and make it impossible for [him] to stand or sit or perform physical tasks for any extended length of time, and which cause [him] to be unable to lift, carry or climb in the ordinary course of employment." *Id.* at 32. The court found that Pala earned approximately $17,000 gross per year when he was required to give up his employment due to his poor physical condition and health.

The court also found that Loubser earned approximately $50,000 at the time of the parties' marriage and after several job changes started her own physical therapy business in Monticello known as Relieve Therapy Services, Inc. The court found that Loubser's business had net earnings of approximately $200,000 for the tax year of August 2001 to 2002.[3] The court found that Loubser "has earned considerably more than $100,000.00 per year for the last two years and can reasonably be expected to earn in that range during her working life over the next 20 years." *Id.* at 34–35. As a part of the division of the marital estate, the court ordered that Pala receive "the residential real estate and the adjacent rental property." *Id.* at 37.

With respect to an award of maintenance, the court found that Pala was "physically incapacitated to the extent that his ability to support himself [was] materi-

tocks; and short hands with fingers that assume a "trident" or three-pronged position during extension. *See Loubser v. Pala,* No. 91A04–0305–CV–239, slip op. at 2, 798 N.E.2d 567 (Ind.Ct.App. Nov. 06, 2003) (citation omitted), *trans. denied.* An autosomal dominant genetic trait, Achondroplasia occurs as a result of a fresh (new) spontaneous change (mutation) in genetic material in about 90 percent of cases. *Id.* In Achondroplasia, affected individuals have impaired ability to form bone from cartilage. *Id.*

2. The court stated that Pala had inherited the residential real estate and had obtained a mortgage in order to remodel and refurbish the home, and that the mortgage and remodeling occurred prior to Pala's marriage to Loubser.

3. For tax purposes, Loubser's business operates on a fiscal year basis beginning on August 1st.

ally affected" and that Pala's social security benefits were "less than half of his earnings when he was last employed full time." *Id.* at 40. The court found that Pala's "ability to support himself on his social security benefits even combined with a small amount of part-time earnings, would probably require [Pala] to sell his present residence, and move to a more affordable residence." *Id.* at 41. The court found that Loubser, "on the other hand, is in good health" and that "[s]he has the income and resources to maintain herself to the standard of living that the parties enjoyed." *Id.* The court ordered Loubser to pay maintenance to Pala "in the sum of $1,200.00 per month during the period of [Pala's] incapacity subject to review and to further Order of the Court." *Id.* The court also ordered that "[s]uch maintenance award may be reviewed by the Court upon application by either party." *Id.*

Loubser appealed the court's ruling and raised issues involving the court's findings of fact, the value of her business, the division of assets, the award of maintenance to Pala, and attorney fees. *See Loubser,* No. 91A04–0305–CV–239, slip op. at 2. Pala cross-appealed and raised issues regarding the value of Loubser's business and marital assets. *Id.* With respect to the award of maintenance in favor of Pala, we noted that under Ind.Code § 31–15–7–2 if a court finds a spouse to be physically incapacitated the court may find maintenance is necessary during a period of incapacity and that although the trial court had found that Pala could hold a part-time job there was substantial evidence that he would be unable to support himself without an award of incapacity maintenance. *Id.* at 10. This court found that the trial court did not abuse its discretion with respect to the award of maintenance in favor of Pala and other issues and affirmed. *Id.* at 11, 14.

In March 2004, Loubser filed a petition for modification of order of permanent spousal maintenance and a motion for change of venue from the judge, and in April 2004 Pala filed a request to increase spousal maintenance. *Loubser v. Pala,* No. 91A05–0504–CV–211, slip op. at 3, 844 N.E.2d 229 (Ind.Ct.App. Feb. 3, 2006), *trans. denied, cert. denied,* 549 U.S. 976, 127 S.Ct. 446, 166 L.Ed.2d 309 (2006). Pala later filed requests related to appellate attorney fees and a tax refund. *Id.* In September 2004, the court issued an order addressing attorney fees and the tax refund issue and ordered Pala to make himself available for a mental and physical examination. *Id.* In April 2005, Loubser filed a motion for relief from judgment under Trial Rule 60, which the court denied. *Id.* at 4. Loubser appealed and this court affirmed the ruling of the trial court. *Id.* at 9.

On September 24, 2008, Loubser filed an urgent motion for termination of spousal maintenance in which she alleged that the maintenance "takes away money that Loubser could save for her own retirement," that Pala "is not physically incapable of taking care of himself" and "capable of owning and operating a rental business," that "[t]he $1200 payment has to be made from dividends already distributed to Pala in the value of the business," and that "Loubser is not able to live in $250,000 home with three boats snowmobiles and property developments and lawn tractors an [sic] frequent trips to Florida as Pala, she had to change her lifestyle completely since the marriage." Appellant's Appendix at 47–48, 50.

On January 27, 2010, the court held a hearing on Loubser's motion, at which the parties presented testimony and introduced evidence regarding Pala's physical condition and the parties' incomes and as-

sets. On March 12, 2010, the court issued an order which stated in part:

> The Court finds that by Order dated January 23, 2003, the Circuit Court dissolved the parties' marriage and ordered [Loubser] to pay maintenance to [Pala] in the sum of $1200.00 per month subject to review and further Order of the Court.
>
> The Court finds that [Pala's] financial situation has improved and that he has received increases in his social security disability such that in 2008 the average monthly amount paid was $963.40 per month with deductions for Medicare insurance. [Pala] has rental property that has been sold on contract which generates at least $500.00 per month. [Pala] currently has approximately $50,000.00 in the bank in his name alone and lots which are currently listed for the sum of $161,000.00.
>
> The Court's Decree indicated that [Loubser's] business had net earnings of $200,000.00 per year which the Court finds is not currently the case, although considering that [Loubser] is paid a salary plus the amount she is required to claim as a result of her Sub–Chapter S Corporation, the amount still exceeds $100,000.00 per year.
>
> The Court finds that [Pala's] physical condition has improved as at the time of the dissolution [Pala] had been regularly treated and examined and at the time of the hearing herein [Pala] testified that he had not visited a doctor for at least two (2) years preceding the hearing. However the undersigned does not find that [Pala's] employability has changed. The Court finds that periodic maintenance payments shall be modified as follows: Effective the 1st day of April, 2010, the periodic maintenance payments shall be reduced to the sum of $600.00 per month for a total of six (6) payments, with the last payment of $600.00 being due on September 1, 2010. Thereafter, commencing on the 1st day of October, 2010, such periodic maintenance payments shall be reduced to the sum of $300.00 per month for an additional six (6) monthly payments with the last payment in the amount of $300.00 being due on March 1, 2011.

Appellant's Appendix at 22–23.

■ The issue is whether the court erred in granting Loubser's motion to terminate the maintenance award. Initially, we note that Indiana courts may order, pursuant to Ind.Code § 31–15–7–1, maintenance in a final dissolution of marriage decree after making findings as required by Ind.Code § 31–15–7–2. A court may order spousal maintenance under Ind.Code § 31–15–7–2 in three circumstances: incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. *Cannon v. Cannon,* 758 N.E.2d 524, 525–526 (Ind.2001) (citing *Voigt v. Voigt,* 670 N.E.2d 1271, 1276–1277 (Ind.1996)). The Indiana Supreme Court has stated that in the absence of an agreement between the parties, the trial court's authority in ordering maintenance is restricted and limited to these three statutory options. *Id.* at 526 (citing *Voigt,* 670 N.E.2d at 1276). The dissolution court in this case awarded incapacity maintenance. Incapacity maintenance is governed by Ind.Code § 31–15–7–2(1), which provides:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Ind.Code § 31–15–7–3 governs the modification or revocation of an order of maintenance and provides in part:

Provisions of an order with respect to maintenance ordered under section 1 of this chapter ... may be modified or revoked. Except as provided in IC 31–16–8–2,[4] modification may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable....

This court has held that the petitioner for modification of a maintenance award has the burden to show by a preponderance of the evidence the changed circumstances so substantial and continuing as to make the terms unreasonable. *Farthing v. Farthing*, 178 Ind.App. 336, 339, 382 N.E.2d 941, 943–944 (Ind.Ct.App.1978); *see also Cox v. Cox*, 882 N.E.2d 283, 286 n. 5 (Ind.Ct.App.2008).

 A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion. *McCormick v. McCormick*, 780 N.E.2d 1220, 1223 (Ind.Ct.App. 2003). Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable under the facts of each case. *Id.* We will find an abuse of discretion only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* We also note that the court's March 12, 2010 order included findings. We are prohibited from setting aside the trial court's findings "unless clearly erroneous." *In re Marriage of Erwin*, 840 N.E.2d 385, 389 (Ind.Ct.App. 2006) (citing *Augspurger v. Hudson*, 802 N.E.2d 503, 508 (Ind.Ct.App.2004)). Upon review, we must first determine whether the evidence supports the findings and sec-

ond, whether the findings support the judgment. *Id.* In our review, we are to "give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* (citing *Augspurger*, 802 N.E.2d at 508). Therefore, when reviewing the trial court's entry of findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* A trial court's findings of fact will be found clearly erroneous only when the record is devoid of evidence or reasonable inferences to support them. *Id.*

Pala argues that the trial court's conclusion to terminate his incapacity maintenance was clearly erroneous. With respect to the court's findings as set forth in the March 12, 2010 order, Pala argues that "each of those facts—so far as they go—were properly found, but they cannot support a conclusion that [Pala's] maintenance should be terminated." Appellant's Brief at 14. Pala argues that "[a]s a threshold matter, a spouse need not be homebound or bedridden to be 'incapacitated' for purposes of maintenance," that "once maintenance has been awarded ... it may not be revoked unless the spouse is once again *fully* able to provide for himself," and that "maintenance should last for the entire duration of the incapacity." *Id.* at 14–15.

With respect to the trial court's findings, Pala argues that the "evidence failed to establish any 'substantial and continuing' change" in either Pala's ability to support himself or Loubser's ability to help him. *Id.* at 15. Specifically, Pala argues that the court found that his employability has not changed and that "[a]ccordingly, the only way to establish 'substantial and continuing change' in [Pala's] ability to support himself would be to show a change in

---

**4.** Ind.Code § 31–16–8–2 relates to health and hospitalization coverage and maintenance ordered as a part of a child support proceeding.

*See Cox v. Cox.* 882 N.E.2d 283, 285 (Ind.Ct. App.2008).

his ability to do so by means other than employment." *Id.* at 16. Pala acknowledges that the court found that he "derives $500 of monthly income from rental property that has been sold on contract," that he has "potential income from lots he has subdivided and listed for sale," and that his social security disability benefit "has increased by $193 per month between the 2002 divorce and the 2009 hearing," and that he has $50,000 in the bank in his name alone. *Id.* But he asserts that "[s]o far as they go, those findings were supported by the evidence-but none of them can support the court's conclusion that [his] 'financial situation has improved' since the original Decree. . . ." *Id.* Pala argues that Loubser "failed to prove that either the rental property [Pala] was selling on contract, or the lots that he was trying to sell, were in any way a 'change' from the original Decree" and that there "was no dispute that the rental house at issue had been awarded to [him] in the Decree." *Id.* at 17. He also argues the record shows that the property he subdivided had been awarded to him in the division of the marital estate.

Pala further asserts that the $193 increase in his social security disability benefit in seven years since the divorce "is hardly a 'substantial' change, if it is a 'change' at all." *Id.* at 18. Pala argues that "a $193 increase . . . is not patently 'substantial' in relation to the $1,200 monthly *decrease* [Loubser] was seeking," that Loubser did not "present evidence that the extra $193 per month had outstripped any increase in [Pala's] cost of living during that time," and that the original decree specifically found that "he was unable to support himself, even with those benefits." *Id.* at 18–19. Pala also asserts that the court's finding that he has approximately $50,000 in the bank cannot support modification because "it shows his finances getting worse, not better." *Id.* at 19.

Pala next argues that Loubser failed to prove that her ability to pay maintenance has changed since the original decree. Pala asserts that Loubser admitted that she "has earned over $100,000 in every single year since the divorce" and that her current income isn't a change but is "consistent with what she's made all along." *Id.* at 21–22. Pala further asserts that whether Loubser "ever earned $200,000 is irrelevant to the maintenance issue, because the award was only based on a finding that [she] was likely to [earn] 'considerably more than $100,000 per year' long term—which she's done in every single year since then." *Id.* at 22. Finally, Pala argues that "[t]he original maintenance award was partly based on the parties' high standard of living during the marriage, so [Loubser] cannot obtain a modification just because [he] might eke by at the poverty line without her help." *Id.* at 23.

Loubser argues that a trial court has broad discretion to modify a spousal maintenance award and that Pala "argues that the trial court should have disregarded the vast amounts of money accessible to Pala via four separate bank accounts." Appellee's Brief at 4–5. Loubser states that "[P]ala argues that the trial court found Pala to be 'unemployable' " but that "[t]his is not the case" and that the dissolution decree "did not find Pala to be unemployable; only that '[Pala] could perform part-time work involving light lifting tasks for a few hours a day. . . .' " *Id.* at 5 (citation omitted). Loubser notes that a "minimum wage job at $7.25 per hour for 20 hours a week would provide Pala with an additional $7,540.00 per year yet Pala has never attempted to obtain any employment whatsoever." *Id.* Loubser contends that "Pala's physical condition was the primary factor in determining the termination of maintenance" and that the trial court was "in position to observe the parties' physical

and emotional state and to properly weigh their testimony." *Id.* at 5–6. Loubser concludes by stating that "[r]egardless of the verbiage in the trial court's order, the court clearly found that there existed a substantial and continuing change in circumstances in order to terminate the previous spousal maintenance order." Appellee's Brief at 7.

In his reply brief, Pala argues that "his (in)ability to support himself through employment hasn't changed—and so maintenance can't be terminated or modified." Appellant's Reply Brief at 2. Pala argues that because Loubser has not responded to his arguments regarding their finances, he "may prevail on those points by showing prima facie error." *Id.* at 3. Pala further argues that there has been no change in his real estate assets since the original decree and that there has been no relevant change in the parties' income.

As previously noted, Pala does not argue that the evidence presented at the January 27, 2010 hearing does not support the findings set forth in the court's March 12, 2010 order. Instead Pala argues that the findings do not support the court's judgment.

██ Initially, to the extent that Loubser does not offer argument on appeal concerning the issues raised by Pala regarding the income and finances of the parties, we note that an appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief and Pala need establish only that the lower court committed *prima facie* error. *See Vukovich v. Coleman,* 789 N.E.2d 520, 524 n. 4 (Ind.Ct.App.2003). *Prima facie* means at first sight, on first appearance, or on the face of it. *Id.* This standard prevents two evils that would otherwise undermine the judicial process. *Id.* By requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. *Id.* By allowing the appellant to prevail upon a showing simply of *prima facie* error, we avoid the improper burden of having to act as advocate for the absent appellee. *Id.*

The record reveals that the parties presented evidence at the January 27, 2010 hearing regarding their respective financial circumstances and Pala's physical condition.

### A. *Pala's Financial Circumstances*

With respect to Pala's financial circumstances, the record reveals that at the time of the dissolution Pala received $770 per month in social security disability benefits from which $54.00 per month was deducted for Medicare health insurance and that Pala was "otherwise unemployed and [had] no other source of income." Appellant's Appendix at 34. The record indicates that Pala received an average of $963.40 per month in social security disability benefits in 2008.[5]

In addition, at the modification hearing Loubser presented the testimony of Pala who indicated that he had received income of $500 per month from a rental property. Pala indicated that at some point he had sold the rental property "on contract" for $50,000 and that he received payments of $500 per month in connection with the sale.[6] Pala also testified that there was "some pasture" located across the street from his residence that he "converted into

---

5. Pala received a total of $11,560.80 in disability benefits in 2008, and $11,560.80 divided by twelve is $963.40. Pala testified that his social security disability benefits had increased to $923 per month.

6. Pala testified that he obtained a loan from his nephew Warren Stevens in the amount of $50,000 so that he could pay off the balance of the bank loan in connection with the rental property and sell the rental property.

[six] lots." Transcript at 50. Pala agreed that the six lots were "in [his] name" and were listed for sale for a total of about $161,000.[7] *See id.* Loubser testified and presented evidence that there were deposits into a rental or special account in the amounts of $6,500 in 2003, $13,600 in 2004, $6,775 in 2005, $10,699.45 in 2006, and $8,066.84 in 2007. Loubser testified that these amounts did not include disability payments or the spousal maintenance payments. The modification court also found that Pala had approximately $50,000 in the bank.

### B. *Loubser's Financial Circumstances*

With respect to Loubser's financial circumstances, the dissolution decree found that Loubser "has earned considerably more than $100,000.00 per year for the last two years and can reasonably be expected to earn in that range during her working life over the next 20 years." Appellant's Appendix at 34–35. The decree also found that Loubser's business had net earnings of approximately $200,000 for the tax year August 1, 2001 to July 31, 2002.

At the modification hearing, Loubser presented evidence that her total personal income, which included her "W–2 wages" and the income she received as the owner of her business, in 2006 was $130,044, in 2007 was $127,350, and in 2008 was $105,152.[8] *See* Transcript at 11. The 2008 tax return for Relieve Therapy Services indicates that the business had ordinary business income of $86,828.[9]

### C. *Pala's Physical Condition*

With respect to Pala's physical condition, the dissolution decree stated:

> The Court finds that [Pala] has significant leg and back problems which cause severe pain and make it impossible ... to stand or sit or perform physical tasks for any extended length of time, and which cause [Pala] to be unable to lift, carry or climb in the ordinary course of employment. The Court believes that [Pala] could perform part-time work involving light lifting tasks for a few hours per day which type of employment would in no way be sufficient for [Pala] to make a living, and which could provide only a small amount of earnings per week in the range of up to $75.00 per week.

Appellant's Appendix at 32.

In its March 12, 2010 order, the court stated in part:

> The Court finds that [Pala's] physical condition has improved as at the time of the dissolution [Pala] had been regularly treated and examined and at the time of the hearing herein [Pala] testified that he had not visited a doctor for at least

---

7. Pala testified that he had a verbal agreement with his nephew Warren "that when [Pala] sell[s] the property, [Warren] gets his money back." Transcript at 51. The lots were listed for $18,000, $20,000, $28,000, $18,000, $32,000, and $45,000.

8. Loubser's individual tax returns which were admitted into evidence show that she had income from "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc." in 2006 in the amount of $91,184, in 2007 in the amount of $89,563, and in 2008 in the amount of $68,105. Petitioner's Exhibits 1, 2, 3.

9. The 2008 tax return for Relieve Therapy Services shows that the business had approximately $332,808 in total income and $245,980 in total deductions, which included among other amounts $46,072 in compensation of officers, $41,241 in salaries and wages, $52,329 for contract labor/outside services, and $10,461 in legal fees. Loubser testified that she was the only full-time physical therapist for Relieve Therapy Services, that she had one full-time office person, one part-time therapist, somebody that will fill in when she is on vacation, and a couple of part-time office people.

two (2) years preceding the hearing. However the undersigned does not find that [Pala's] employability has changed. *Id.* at 22.

At the modification hearing, Pala testified that he had probably not seen a physician for two years. Pala further indicated that he has not been prescribed any medications for the last two years. Pala testified that he had back surgery in 1994 and is in need of additional surgery. When asked why he has waited so long to get the next back surgery, Pala answered: "[m]oney and I'm scared." Transcript at 41.

In addition, Loubser presented the evidence of the testimony and findings of a private investigator she had hired. The investigator testified that in 2004 he recorded Pala on a hillside lot next to his residence riding a mower for about an hour and twenty minutes and on a dock about half of a mile from his residence helping a person work on a boat or boat lift by handing the person tools. The investigator also testified that he recorded Pala hand shoveling snow on his driveway and backing his vehicle into the garage in 2009. The recordings of the investigator were introduced into evidence and portions were viewed by the trial court.

 In summary, the parties presented testimony and other evidence regarding their respective incomes and financial situations and Pala's physical condition, and the trial court was able to review and consider the evidence in exercising its discretion in deciding whether to terminate Loubser's maintenance obligation. At the time that maintenance originally was awarded, $1,200 per month was determined to be a fair amount in light of Loubser's income and Pala's financial situation and physical condition. However, we note that the parties were married for approximately seven years before they separated and filed for divorce, and nearly eight years have elapsed since the dissolution of the parties' marriage. The court was able to consider the extent to which Loubser's income has decreased and Pala's health has improved during that time and the steps Pala did take or could have taken to address his physical or financial circumstances. Based upon our review of the record, we cannot say that the evidence leaves us with the firm conviction that a mistake has been made or that the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.

For the foregoing reasons, we affirm the court's order related to the modification and termination of maintenance in this case.

Affirmed.

DARDEN, J., and BRADFORD, J., concur.