**FOR PUBLICATION**



FILED

Dec 14 2012, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EDWARD P. GRIMMER**
Austgen Kuiper & Associates, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**JENNIFER M. CAMPBELL**
Law Office of Weiss & Schmidgall, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>CHRISTINE BANKS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>vs.</td><td>)</td><td>No. 45A03-1203-DR-96</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>TIMOTHY R. BANKS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Appellee.</td><td>)</td><td></td></tr>
</table>

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Michael Sarafin, Magistrate
Cause No. 45C01-9907-DR-1922

**December 14, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Christine Banks appeals the trial court's reduction of the amount of spousal maintenance she receives from her ex-husband, Timothy Banks. We affirm.

## Issue

The dispositive issue we address is whether there is sufficient evidence to support the trial court's modification of spousal maintenance.

## Facts

Christine and Timothy's divorce was finalized on September 5, 2000. The parties contested whether Timothy would be required to pay spousal maintenance to Christine because of her chronic kidney disease that had required a transplant and continuing dialysis. Timothy was diagnosed with Crohn's disease during the marriage but was able to work full time at the time of dissolution, earning approximately $50,000 annually. Christine was not employed at the time of the divorce. The trial court determined that Christine was physically incapacitated and ordered Timothy to pay $500 per month to her as maintenance "until further Order of the Court." App. p. 26.

Timothy filed motions to modify and reduce his maintenance obligation in 2002, 2003, and 2005. The trial court denied each of these motions. In response to the 2003 motion, the trial court found that Timothy's request to reduce his maintenance obligation was "frivolous and baseless . . . ." Id. at 34.[1]

---

[1] In a 2007 order relating to emancipation of Christine and Timothy's child, the trial court also stated that the $500 per month in spousal maintenance was to "remain in full force and effect." App. p. 35. It is

2

On June 27, 2011, Timothy filed another motion to modify and reduce his maintenance obligation. The trial court held a hearing on the matter on November 30, 2011. The evidence indicated that on August 2, 2010, Timothy lost his job with Longhorn Steakhouse after exhausting all of his possible medical leave time under the Family and Medical Leave Act ("FMLA"), which he had used following surgery and a bowel resection because of his Crohn's disease. The Indiana Department of Workforce Development subsequently found that Timothy was "[i]nvoluntarily unemployed due to a physical disability." Ex. F. A physician who examined Timothy in connection with the unemployment proceedings did find that he could return to work as of August 16, 2010, "with reasonable accommodation." Ex. E. However, as of September 2011, Timothy himself had no source of income, and he and his current wife had filed for Chapter 13 bankruptcy in May 2011. Between 2009 and 2010, Timothy and his current wife's household income had dropped from $69,840 to $43,439. There also was evidence presented at the hearing that Christine earned $8,504 from part-time employment in 2010, whereas she was earning nothing in 2000 at the time of the divorce. Finally, Timothy's attorney informed the trial court that he had applied for Social Security disability benefits, but no final resolution of that application had yet been reached.

On December 8, 2011, the trial court entered an order reducing Timothy's maintenance obligation to $40 per week, or approximately $173.33 per month.[2] The trial

unclear, however, whether Timothy actually requested reduction of his maintenance obligation at that time.

[2] Christine erroneously states in her brief that the obligation was reduced to $40 per month.

court did not note any change in Christine's medical condition, but believed "that the parties' present financial circumstances necessitate reduction of the spousal maintenance order herein . . . ." App. p. 22. Christine now appeals.

**Analysis**

At the outset, we address Christine's motion to strike material Timothy included in his appellee's appendix. Specifically, Timothy has provided to this court a copy of a decision by the Social Security Administration ("SSA"), dated April 20, 2012, stating in part that Timothy has been disabled since April 1, 2010, for purposes of the Social Security Act. Timothy has requested that this court take judicial notice of the decision for purposes of this appeal, pursuant to Indiana Evidence Rule 201.

Indiana law currently is unclear on whether this court may judicially notice either the ultimate legal determination of the SSA regarding Timothy's disability or the factual findings of the SSA administrative law judge regarding the extent of his illness. Obviously, the SSA's decision was not yet in existence when the trial court ruled in this matter. Ordinarily, this court may not consider evidence outside the record presented to the trial court in resolving an appeal. In re D.Q., 745 N.E.2d 904, 906 n.1 (Ind. Ct. App. 2001).

Indiana Evidence Rule 201(f) does provide that "[j]udicial notice may be taken at any stage of the proceeding," which includes appeals. CGC Enter. v. State Bd. of Tax Comm'rs, 714 N.E.2d 801, 803 (Ind. 1999). On the other hand, judicial notice may not be used on appeal to fill evidentiary gaps in the trial record. Dollar Inn, Inc. v. Slone,

4

695 N.E.2d 185, 188 (Ind. Ct. App. 1998), trans. denied; but see Matter of American Biomaterials Corp., 954 F.2d 919, 922 (3rd Cir. 1992) (holding that an appellate court may "in a proper case take judicial notice of new developments not considered by the lower court"). Ultimately, although the SSA decision could be relevant to Timothy's claims on appeal, our scrutiny of the record actually presented to the trial court leaves us with sufficient information to affirm its decision. We need not definitively resolve whether we could or should take judicial notice of the SSA decision. However, because Timothy presents a colorable basis for taking judicial notice of the SSA decision, we decline to order that the pages of his appendix containing the order be stricken.

We now turn to the merits of this appeal. Christine originally was awarded spousal maintenance on the basis of a physical incapacity that materially affected her ability to support herself, pursuant to Indiana Code Section 31-15-7-2(1). Petitions to modify such an award are governed by Indiana Code Section 31-15-7-3(1), which provides that the award "may be modified . . . upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."[3] A spouse seeking modification of a maintenance award bears the burden of showing by a preponderance of the evidence the existence of changed circumstances so substantial and continuing as to make the terms unreasonable. Pala v. Loubser, 943 N.E.2d 400, 405 (Ind. Ct. App. 2011), trans. denied.

---

[3] The spousal maintenance award in this case was the result of a court order, not an agreement of the parties. Thus, our supreme court's holding in Voight v. Voight, 670 N.E.2d 1271 (Ind. 1996), which addresses only agreed-upon maintenance awards, is inapplicable here.

"A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion." Id. Discretion is a privilege afforded trial courts to act according to what is fair and equitable under the facts of each case. Id. An abuse of discretion will be found if the trial court's decision is clearly against the logic and effect of the facts or reasonable inferences to be drawn therefrom, if the trial court misinterprets the law, or if it disregards evidence of factors in a controlling statute. Mitchell v. Mitchell, 875 N.E.2d 320, 323 (Ind. Ct. App. 2007), trans. denied. We also note that the trial court entered some findings with its order modifying maintenance, but they were not requested by either party nor are they of the detail normally associated with formal findings and conclusions under Indiana Trial Rule 52(A). We characterize the trial court's order as a general judgment with findings, which may be affirmed on any legal theory supported by the evidence. See In re Trust Created Under Last Will and Testament of Mitchell, 788 N.E.2d 433, 435 (Ind. Ct. App. 2003). We will neither reweigh the evidence nor judge the credibility of any witnesses. Id.

Christine vehemently argues that under Indiana law, an award of incapacity spousal maintenance cannot be modified or reduced unless there has been a showing that the incapacitated spouse's health has improved, and there was no evidence that her health had improved since the time of the divorce. This position is incorrect. This court has held that when determining whether there has been a substantial change in circumstances justifying modification of a spousal maintenance award, a trial court should consider the factors underlying the original award; those factors include the financial resources of the

6

party seeking to continue maintenance, the standard of living established in the marriage, and the ability of the spouse paying maintenance to meet his or her own needs. Mitchell, 875 N.E.2d at 323; Lowes v. Lowes, 650 N.E.2d 1171, 1174 (Ind. Ct. App. 1995).

In Mitchell, this court affirmed the reduction of an incapacity maintenance award from $400 per month to $250 per month where the only evidence presented was related to the receiving spouse's increased income from other sources since the time of the divorce; there was no evidence regarding the receiving spouse's health. Mitchell, 875 N.E.2d at 324. Likewise, in Lowes, this court held that it was proper to reduce (though not eliminate) an incapacity maintenance award based solely upon the obligor spouse's loss of employer-sponsored health insurance coverage for the receiving spouse. Lowes, 650 N.E.2d at 1174-75. These cases clearly demonstrate that a change in financial condition of either the obligor or receiving spouse, or both, may warrant a modification and reduction of an incapacity maintenance award, without reference to the health of the receiving spouse. We would be loath to permit a reduction of a maintenance obligation where the evidence indicated the obligor spouse had reduced his or her income in order to evade the maintenance obligation, much as we do not permit a parent paying child support to become voluntarily unemployed or underemployed in order to obtain a reduction in support. See Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001). But where the obligor spouse's reduction in income or deterioration in financial condition is the result of factors beyond his or her control, he or she should not be forced

7

to continue paying maintenance at a level based on a higher income or better financial condition. One cannot bleed a turnip.

In the present case it was not abuse of discretion for the trial court to modify and reduce Timothy's spousal maintenance obligation to Christine on the basis of changes in the parties' respective finances, even if there had been no improvement in Christine's medical condition. And, despite Christine's argument to the contrary, there was evidence that since the divorce Timothy's financial situation had considerably weakened while Christine's had slightly improved. Such evidence demonstrated the existence of changed circumstances so substantial and continuing as to make the terms of the original maintenance award unreasonable and subject to modification.

There was evidence presented that on April 2, 2010, Timothy underwent a bowel resection as a result of his Crohn's disease. There also was evidence that Timothy exhausted all of his FMLA time at his place of employment during the spring and summer of 2010, leading to his termination in August 2010. The Indiana Department of Workforce Development found that Timothy was "[i]nvoluntarily unemployed due to a physical disability," even though a physician stated that Timothy could return to work as of August 16, 2010, "with reasonable accommodation." Exs. F, E. Timothy's tax returns and May 2011 bankruptcy filing indicate that he and his current wife had household income of $69,840 in 2009, and $43,439 in 2010; of that 2010 figure, Timothy earned $30,035 and his current wife $13,404. Timothy also received approximately $7,000 in unemployment compensation in 2010. As of the time of the bankruptcy filing in May

2011, Timothy was unemployed and his current wife had earned a total income of $5,246.58. Timothy was still unemployed at the time of the November 2011 hearing. As for Christine, she had earned income in 2010 of $8,504 from working part-time. That certainly is not a lucrative income, but Christine was not earning any money at all from employment at the time of the divorce.

Regardless of the evidence regarding a drastic downturn in Timothy's financial situation, Christine contends that he has been able to work in the past with his Crohn's disease and that he essentially should be expected to continue working in the future as he had in the past. For us to agree with Christine, however, we would be required to reweigh the evidence before the trial court, which we cannot do. The evidence most favorable to the trial court's ruling is that because of progression of Timothy's Crohn's disease, he cannot earn nearly the same income as he made at the time of the divorce. Moreover, Christine seems to contend that Timothy's current situation is no different than it was the previous three to four times he attempted to reduce his spousal maintenance obligation. Again, given evidence of deterioration in Timothy's health and resulting unemployment and bankruptcy, we cannot say he was precluded from filing the current modification petition and succeeding upon it. Finally, Christine's current ability to earn approximately $8,500 yearly from employment, which was not present at the time of the divorce, represents income of over $700 per month, or more than Timothy had been paying in spousal maintenance.

The evidence here most favorable to the trial court's ruling is that Timothy's unemployment at the time of the hearing and drastic reduction in income was a result of factors beyond his control, namely, his own chronic illness. As such, we cannot say the trial court abused its discretion in reducing that obligation to $40 per week, or approximately $173.33 per month.

## Conclusion

The trial court was permitted to modify and reduce Timothy's spousal maintenance obligation to Christine solely upon the basis of evidence related to the parties' respective finances and Timothy's health, and that evidence justifies the reduction of Timothy's obligation from $500 per month to $40 per week. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.